The next case is 20-1038 and 20-1089, Noemi Torres-Ronda et al. v. Nationwide Mutual Insurance Co. et al. Attorney Vasquez, please go ahead and introduce yourself on the record so that we may begin. Good morning, my police and court. This is Attorney Vasquez together with Jose Catales as appellants and cross-appellees in this matter. If I could reserve, if I could ask the court to reserve three minutes for rebuttal if it's necessary from either of us. Yes. Yes. Okay, so let me proceed and good morning to all sister and brother councils. What is at stake here is a purported conflict between two code sections of the insurance code that the district court understood existed based on a Puerto Rico Court of Appeals opinion. One of them has to do with the non-refundability of the profits portion of the dollar distribution premium and the other has to do with the requirement of the refunding of portions of the distribution of the dollar premium that were not expended. That particularity in the case of Puerto Rico falls under the chapter to prevent fraud. The district court understood and found that there was a conflict between those two code sections. There isn't. I thought the district court thought that the analysis done by the Puerto Rican Court of Appeals was sufficiently persuasive and that you had not provided reasons to doubt that that would be the controlling law as to the rights and obligations of the various defendants here. So to my mind, I want to just put aside the res judicata, the collateral estoppel. Let's just assume this is a routine application of state law. Now proceed please from that. Our understanding is that the decision by the Puerto Rico Court of Appeals is simply wrong. These are two completely different cases than the one that the Puerto Rico Court of Appeals addressed. That one had to do with an allegation of overcharging in the dollar premium and of negligence and failure to making that a refund. We're arguing something completely different. We're arguing here that there's fraud, there's embezzlement, there's racketeering. Based on that is where I think the district court just misses the mark and the application of... Let me ask you this way. The district court read the Puerto Rico Court of Appeals decision, appellate court decision to say that the funds in question, that's the type of funds that is the hinge for your various claims, had to be put in the excess reserve fund and could not be sent back to the customer, correct? That's basically the interpretation there. You're not disagreeing that if that's the correct statement of Puerto Rico law, you're out of luck. Judge, we're sort of in a gray area on that point. What we argued in the record ad nauseum, there is no special reserve fund. Okay, just stick with me for a second, I just want to make sure we're not talking past each other for the next ten minutes. If the Puerto Rico law correctly understood required the funds to be put in the reserve fund rather than returned to the customer, none of your claims can go forward, is that right? Judge, I don't think that that's a question that I can answer with a yes or no, because it's ... Judge, it has to do with the source of where those funds come from, and that's part of the crux of this case. No, no, no, no, no, no, no, no, no, no, no, no, no, no, no, no, no, no, no, no, no, no. If the answer to Judge Barrett's question is yes, the yes means that all the defendants here are doing what the law either requires or permits them to do. If that's the case, how can you divine then a Rico claim that is based on fraud? And that's really what the district court is saying, that what's going on here is written in law, the administrators are following the law, so you can't get a Rico claim out of that. So how can you say there's a gray area here? I don't understand that at all. Unless you're disputing the Puerto Rico Court of Appeals interpretation or the district court's interpretation of Puerto Rico law, I understand that. But if you're not disputing that, I don't see what's left of your case. No, we are. I know that you are, but I just want to make sure that you're agreeing that if the district court stated the law correctly under Puerto Rico law, you're out of luck. Basically yes. Okay. And we, let me, if you would indulge me, let me just add the point is that we believe that the Puerto Rico Court of Appeals opinion and order is completely wrong. Yeah. So, okay. So, so the, so the, you say there's no conflict. The district court says, well, we have a more recent law, the compulsory liability law that's passed, I don't know, 20, 30 years after that general insurance provision that you rely upon, which talks about refunding, you know, we have a specific provision here as opposed to the general one. So you have a later enactment, very specific. Those all sound to me like very traditional statutory interpretation rules. I don't get what's wrong with that. It struck me as right. So what's wrong, what's wrong with the district court's reliance on those two principles? What makes that wrong? Judge, Judge Lopez, there are two cases decided by this first circuit court of appeals. One is Arroyo Melecio and the other is Flores Galarza. When those cases came back, the Puerto Rico legislature amended the statute to be in compliance with the opinion and orders of this court, and they left undisturbed the application of a refund requirement under insurance code section 2716. They had an opportunity to say there, you are exempted from application of a fraud code section, and they didn't. But why would they need to do it if in the more specific provision they said that you have to put it in the reserve? Well, I think it stands to reason, Judge Barron, that if that would be the case, they would have said... I'm sorry to interrupt. I apologize. One of the other attorneys on the line, Judge, has indicated that they cannot hear the proceedings right now. I'm trying to ascertain who that is. They've texted me, but I don't know who it is. I'm trying to figure that out so that we don't delay things any more than we need to. I apologize. If they can't get on on Teams, they should go to YouTube to hear the argument. See that that's done promptly. We want to continue with this, please. I hear you. Yes, Judge. So, is there anyone, any member of counsel that's trying to hear this that is part of the argument today, please let us know. You need to reply to me by telephone, and I'm going to wait for a response there. Judge, I'm going to stop interrupting and let you go back to your argument. I apologize. It doesn't... No one seems to be clarifying it. All right. Then, we're going to assume everybody's hearing it. Mr. Vasquez, I'm going to follow up on Judge Barron's question, since I wrote a number of those earlier decisions. A great deal of my life has been spent on the question of the compulsory auto insurance law and various due process and other violations. Puerto Rico thereafter enacted a new law, which does appear, as my colleagues have said, to say those funds go into this special fund. So, at present, I do not see that there was any error on the part of the district court in concluding that, therefore, what the defendants have done was legal. In fact, it was required, and therefore, there can be no basis for a RICO claim. So, what is wrong with my chain of reasoning? Let me go back to a step before the Puerto Rico Court of Appeals, apparently in order, which relied on a Puerto Rico Supreme Court case, which basically addressed what or how much of the profit could the joint ... I'm sorry. Is this an argument that the Puerto Rico Court of Appeals simply got it wrong? Yes. Okay. Now, suppose that we conclude that that is a matter of state law. Perhaps the Puerto Rico Supreme Court will someday disagree with that, but they actually haven't for a while now, and that the highest state court authority we have is the court, the Intermediate Court of Appeals, and that the district court understood it correctly. What is wrong with that? Well, Judge, I think it's important to underscore here what the Puerto Rico Supreme Court in the Supreme Court case that the Court of Appeals was relying on. What was that issue? It was how much of the profit margin could be distributed among members of the JUA. That's what it dealt with. They said, look, what you guys have got to do with this fund is deposit it and leave it in that special reserve fund. Now, I would point to the appendix, which is page 6351, where this is addressed, and the Supreme Court specifically says, the record before our consideration does not reflect the origin of these assets used of the funds used for the investment of the JUA's assets. This issue of fraud was never before them. What was before the Supreme Court was how much can you distribute, and in that sense, I do believe that the Puerto Rico Court of Appeals got this wrong. I was going to move to a different type of question, so go ahead. Just very quick, I wish you would distill for me, what is the fraud here? Are you suggesting that funds that are supposed to go into the special reserve fund, the so-called into that fund, that in fact, contrary to the law, contrary to what the courts in Puerto Rico said, they are taking that money and distributing it to themselves? Is that the fraud? Or is the fraud that they send out these letters and they do not advise Puerto Rico residents that they're entitled to reimbursement if, in fact, these license fees are not being used for administrative costs and brokerage fees? What exactly is the fraud? I've been reading all this stuff, and I am left with that question. What is the fraud that you're alleging? Judge López, what the fraud is, is under Puerto Rico law, they were supposed to use a broker and they were supposed to issue policies. They didn't, and they saved approximately 12% of the premium. Now, under the Puerto Rico Code, the portion that is not used has to be refunded. And they converted that money to themselves. That's for profit. That's where the fraud is. That money was supposed to be returned to the consumer. I had one last question for me, which was, I understood your briefing, but I could be wrong to have made at least one argument that would survive even if we agreed with the Puerto Rico Court of Appeals decision, and that had to do with the contention that the district court somehow abused its obligations with respect to the settlement negotiations. Am I right that that argument is an argument you're making, that even if the Puerto Rico Court of Appeals decision is correct, and even if the district court was right to think it was correct, because of the way the settlement negotiations had played out, it was obliged not to grant the motion to dismiss the motion for summary judgment, and that it had some obligation to consummate the settlement deal? Judge, the argument on that point is, the district court stood, sat for three and a half years on a settlement, and never made a decision. There's basically several million unrepresented class members that we think that the Federal Rules of Civil Procedure, Rule 23, put an obligation on the district court of appeals excuse me, the district court had an obligation to watch for the adequate protection of those class members that were not privy to any of this process. We think that three and a half years without moving that transaction was an abuse of discretion. I'm sorry, then tie that contention to this case, because as a practical matter, there had been no approval of the class settlement. You may have been unhappy about that, but that was the situation. So how does your unhappiness with the delay have anything to do with this case? Well, I think there are sort of two different sort of independent issues. The misconduct of the defendants' behavior throughout this course is just one thing. That goes to their fiduciary duty in their handling of those funds. And what's your other argument? You presented the argument of breach of fiduciary duty. What's your other argument? As far as the district court? Yeah, tying it to this case. With respect to the settlement? Well, Judge Lynch, there's sort of two completely independent issues. You've said that. What is the second one? I'm not sure I'm following your question, then. OK, then I'll withdraw the question. Maybe I'll just ask it this way. With respect to the settlement argument that you set forth in your brief, what is the outcome that you think follows if we agree with it? The outcome should be a refund of the amounts of money that were not returned, mainly an 8% to cover the cost of brokerage fees. Is that what was the settlement? Is that because we just basically then approved the settlement? Is that what you're asking us to do? Well, yes. OK. Judge Lopez, any questions? I do not have time. Thank you. OK, thank you. OK. Thank you. At this time, I believe that we were going to hear from Attorney Kweklas. Is that right? My understanding is it would now go to the cross appellants. Because we are cross appellees on the issue of, well, no, it would be Sister Counsel Rios. I'll defer to the judge. We usually hear from all the counsel on one side first and then the responsive side. I'll defer to Judge Lopez. We'll hear from Attorney Rios and then we'll come back. OK? Thank you, Judge. Attorney Rios, please introduce yourself on the record. Good morning. My name is Morayma Rios-Robles. May it please the court. And you're representing JUA? Yes. My name is Morayma Rios-Robles on behalf of the Joint Underwriting Association. And as of today's argument, also on behalf of the non-cross appellant appellees in the case. As stated in our joint brief, the appellee's position is that this court should affirm the district court's decision that as a matter of state law, a reasonable trier of fact would not find that predicate acts indictable as male fraud occurred in this case. Thus, no racketeering, no conspiracy to transfer racketeering proceeds and no racketeering proceeds to invest or present. To reach this conclusion, the district court correctly decided the core issues of state law at stake in this case following the Commonwealth Court of Appeals' decision in Collazo Burgos under the Erie Doctrine. That is that the JUA is not allowed as a matter of state law to reimburse persons of the compulsory insurance premiums under Section 2716 of the Insurance Code. As this court is well aware, the compulsory insurance scheme has spawned a great deal of litigation both in the local and federal levels. And Collazo Burgos is but one of the multiple insurance instances in which the local courts have ruled upon the appropriateness of Law 253 and the JUA's actions pursuant to it. In Collazo Burgos, a plaintiff class of vehicle owners insured with the JUA's compulsory liability insurance sought the reimbursement of 12% of the compulsory insurance premium under Section 2716 of the Insurance Code, claiming that the JUA did not spend 8% of the premium that was allegedly earmarked for broker commissions and 4% of the premium that was allegedly earmarked for paper policies. In Collazo Burgos, the JUA argued that the rate of the compulsory insurance premium is specifically set by Section 8056A of Law 253 and that as per Section 8051 of Law 253, such premium is non-refundable. Furthermore, that Article 20E2 of Rule 70 requires the JUA... Your opponent has conceded that his case basically depends on the contention, apart from the settlement issue, that the State Appeals Court got it wrong. So, why is it there was no error by the District Court in using the State Appeals Court decision? Well, there was no error on part of the District Court on adopting the conclusions of law of the Court of Appeals because as this Court has established, this Court is supposed to give weight and consideration to the decisions rendered by State Intermediate Courts when on-point precedents from the Supreme Courts of States are not present. So, in this particular case, giving the due deference to the Court of Appeals decision was a correct action. And furthermore, as the District Court decided in this case, the Court of Appeals engaged in the normal statutory construction rules here in Puerto Rico, that is, that it looked into the laws that were at issue. They were clear and unambiguous, all three of them. However, they had a conflict among themselves. So, under the statutory construction principles of the Civil Code, the Court of Appeals was supposed to look into both laws, into all the three laws, and look into the dates, and decide for the most recent, and look into whether they were general or specific, and decide for the most specific. And that's precisely what the Court of Appeals did when it decided that Section 8051 of Law 253 and Article 20E2 of Rule 70 are both more specific and more recent than the general portion of the insurance. Do you have anything to say about Judge Barron's question as to the settlement? No, because we are not part of the settlement. Right. Okay. Thank you. Does the Court have any further questions? Yeah, very quickly. I know we've talked a lot about the reasoning of the Intermediate Court of Appeals in Puerto Rico, the reasoning of the District Court, whether it's right or wrong. Even if there was reason to question the legal reasoning of the Puerto Rico Intermediate Court of Appeals, the District Court. And so, we don't think they got it quite right. Why would that matter? I mean, if you have administrators following what they think is the intent of the law and the books, and courts support that, even if it turns out that the legal reasoning was wrong, how do you get a... I mean, if they're acting according to law and decisional law, which says what they were doing was okay, how do you get fraud out of that, even if that's wrong? Well, our answer to the question is that there is no fraud in this case. As to this particular matter, this is very similar to what this court saw in the case of Calixto Colón Rivera that was also against the JUA. In that case, the court decided that following what Law 253 said could not be fraud and could not be illegal. And there could be no conspiracy as to that. So, that is our position regarding those allegations. So, even if the Court of Appeals had not decided what it did, the reasoning would still be the same. Law 253, Article 8051 says that the premium is not reversible, and Article 282 of Rule 70 says that any excess has to be placed in the special reserve. Okay, thank you. Are there any further questions? No. No. Okay. Thank you, counsel. You're welcome. Thank you, Attorney Rios. You can... I'm sorry. You can mute your device at this time. I am still unsure whether we're going to hear from Attorney Quetglas or Attorney Hanover at this time. Your Honor, this is Attorney Hanover. I think that I would be next. I represent the Appalese and Cross Appellants. Yes, go ahead, please. We'll hear from you. Okay. Good afternoon, Your Honors. I represent Allstate, Nationwide, and AIG Puerto Rico, which are Appalese and Cross Appellants. In 2019, when the district court considered the effect of Criatso-Virgos, there were three categories of summary judgment motions pending. One category is the individual motions filed by several of the insurance carriers, which had been pending for five years without resolution. These individual motions were supported by declarations that factually asserted the lack of relevant involvement with the JUA. All three of my clients testified that, as a factual matter, they had no agreements, no management role, and no control of the JOA, nor did they have any involvement in any of the decisions, whether to use brokers, to issue paper policies, or to issue refunds. Indeed, Allstate and Nationwide left the Puerto Rico insurance market altogether in 2001. The court denied the individual summary judgment motions in early 2019 without providing any opinion or reasons, and we have raised that denial as an error in our cross appeal. However, there were two additional pending summary judgment motions, which together relied on the authority of Criatso-Virgos, as well as myriad arguments regarding RICO, the Filed Rate Doctrine, the Nora Pennington Doctrine, and the McCarran-Virgos Act. All of these issues are fully briefed on this appeal. When granting summary judgment, the district court explicitly stated that it was granting both of the remaining summary judgment motions, and there is no dispute that my clients joined one of them. This ended the case for my clients, just like it ended the case for the remaining defendants. Just prior to granting summary judgment, the district court issued an order expressing an assumption that my clients had withdrawn from any summary judgment motions because they were parties to a proposed class action settlement that the plaintiffs had moved to approve three years earlier. However, the carriers promptly filed a pleading that corrected the district court's misunderstanding and explained that the carriers quote, remain movements to the same extent they were movements when the motions were first filed, unquote. This was logical because there was no way to know whether any settlement would be approved. There was never any agreement to withdraw from any of the summary judgment motions, and there was never any actual withdrawal from the summary judgment motions. The plaintiffs never challenged or objected to my client's position, and the district court expressly recognized that my clients were still movements for summary judgment. The plaintiffs argue that the district court should have adjudicated their motion for preliminary approval before ruling on summary judgment, but they offer no relevant support for their position. District courts have broad discretion to control their own docket, and the court here reasonably decided to first consider whether there were any viable claims to settle. It was prudent for the court to adjudicate summary judgment first because that resulted in a finding that the plaintiff's RICO claims were invalid, and there was no further jurisdiction. This compelled entry of judgment for all the defendants and disposal of this case in its entirety. If this court were to reverse the district court's entry of summary judgment, or if this court were to find that my clients are somehow not entitled to the judgment that the rest of the defendants enjoy, then we would raise issues on cross-appeal relating to the class certification order and the refusal to deny certification. It seems to me that if there's a point of any ambiguity, and maybe there's none, if I understand it, when asked whether you continued to join in the motion for summary judgment, you said you do to the same extent as you did before. Yes, yes. Was there any uncertainty as to what that extent was? No, we wrote and filed. We were the lead movements on the pending summary judgment motion. And that's the one that's relying on the Puerto Rico Court of Appeals' decision? No, there was two. One was the case in Burgos, and that one my clients didn't join. And then the second one, all defendants joined. It was written by my clients. This is my puzzlement. The district court has entered summary judgment based on the Court of Appeals' decision. And if I'm understanding you, your clients never joined in that motion for summary judgment. At the time, the motion for preliminary approval was pending, and so we did not join the kayats or Burgos, but we never withdrew from the original motion for summary judgment. But that's not the motion for summary judgment that was ruled on? No, Your Honor. The court's order explicitly references two motions for summary judgment. She grants both of them, and she notes that my clients were movements in one of the two summary judgments. She doesn't really address the issues. One of the summary judgment motions dealt with all of the Rico issues, and Nora Pennington, and McCarran Ferguson, and all of those things. She had never ruled on that one. Are you being granted summary judgment on a ground you never requested? Well, no, Your Honor. I mean, I don't... the court did not... Well, just tell me, did you ever make a motion for summary judgment on the basis of the Court of Appeals' decision? No, because the Court of Appeals' decision was issued after we filed our motion for class certification. Did you ever make a motion for summary judgment on the ground that the statute prohibited the funds from being sent back to the consumer? Yes. Yes, we did, Your Honor. It did not cite Collazo-Burgos, because that hadn't been decided, but we absolutely moved on those grounds, unquestionably, Your Honor. Yes. Okay, so your understanding is the district court understood both motions to present the same ground. That's why she's granting both motions. Yes, thank you, Your Honor. That's more clear. Yes. All right. Any further questions? I would say that with respect to class... Oh, I'm sorry, you were speaking to... To my colleagues. No, I have no further questions. I believe you've answered the important question. Okay. You don't need to... We'll rely on your brief as to the class certification arguments you want to present. Okay? Thank you, Your Honor. Thank you. Thank you, Attorney Hanover. I think at this time you can mute your audio and video. Judge, I think we wanted to hear from Attorney Kwetglas at this time. Yes. Yes. I will be going into rebuttal. Mr. Kwetglas was going to be handling any argumentation related to class. None was addressed. Unless the court has any questions regarding that, then I can just pass it back to him. Otherwise, the only thing that I would add would be regarding what Mr. Hanover was addressing about the independent three motions to summary judgment. We object to that and we address that in the brief. That's sort of a back way to bring in something that was not part of their notice of appeal. It wasn't addressed. The other thing is that he references and addresses to the court that some of them were based on these sworn statements. We have motions to strike those precise sworn statements because they were of witnesses that were never identified to us during the discovery process. We sort of got sandbagged with that. Outside of that, we really have nothing else to address unless the court has... On the notice of appeal point, your argument is that they're not able to get the... I don't understand what the significance of that is with respect to the district court's entry of summary judgment in their favor. Correct. Yeah, they can't appeal that here. Why would they want to? It's in their favor. Well, that's something that I looked at in their brief and I'm not understanding why they're appealing. If the summary judgment was granted in their favor, it's hard for them to come out badly. Well, the three motions for the individual settling defendants, AIG Nationwide and Allstate, those were denied. Although it's not part of the notice of appeal, they addressed it pretty significantly in their brief and we took exception and objected to it. But what about the point that was made? This is what I'm trying to figure out with the record. The district court purported they contend to be granting their summary judgment motions as well in the ruling. Yeah, I mean, that is a correct interpretation. Okay. Mr. Vazquez, I've declined to hear argument on the class certification cross-appeal as unnecessary. We'll rely on the briefs. I think we could do that for whatever Mr. Quicklass intended to say, unless my colleagues have some questions on that point. We do not. Okay. So thank you for the offer, but we're going to decline it. Do you have a final one-sentence thing you want to impart to us? We don't, Your Honor, and we appreciate the effort that this court has made in hearing us out. Thank you very much. Okay. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, please disconnect from the hearing.